UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CELINE BRAY,  Case No. 1:13-cv-40

    Plaintiff,  Barrett, J.
                                                 Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Celine Bray filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"),[1] alleging disability due to bipolar disorder and social anxiety disorder, with an onset date of January 31, 2008. After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in May 2011, at which Plaintiff was represented by counsel. At the hearing, ALJ Christopher McNeil heard testimony from Plaintiff, from Plaintiff's sister, from a state

---

[1]Plaintiff's SSI application was denied for lack of eligibility; only her eligibility for DIB is at issue in this appeal.

1

psychologist who served as a medical expert, and from a vocational expert. On May 18, 2011, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled. (Tr. 16-25).

Plaintiff appealed, and on February 15, 2013, the Appeals Council determined that the ALJ had erred in finding that the date Plaintiff was last insured was March 31, 2009. Instead, the Appeals Council held that "the correct date last insured was September 30, 2009." (Tr. 4). With the exception of correcting that factual error, the Appeals Council adopted all other findings of the ALJ, including his conclusion that Plaintiff was not disabled. (Tr. 6).

Plaintiff was 29 years on her date last insured. (Tr. 24). She has at least a high school education, and helps to care for her two young children, the younger of whom was born in September 2009. Her work history ranges from "marginal" to nonexistent, (*see* Tr. 18), but she does have some prior experience as a housekeeper/cleaner, performed at a light level of exertion. (Tr. 24).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the severe impairments of bipolar disorder and social phobia. (Tr. 18). However, neither of those impairments, either alone, or in combination, met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). The Commissioner next determined that, as of her date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, limited only by the following:

> Due to the claimant's mental impairments, she can understand and remember simple instructions, sustain attention to complete simple repetitive tasks where production quotas are not critical, tolerate co-workers and supervisors with limited interpersonal demands in an object-focused, nonpublic work setting, and adapt to routine changes in a simple work setting.

2

(Tr. 20).

Based on her RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a housekeeper/cleaner. Alternatively, the ALJ determined that other jobs existed in significant numbers in the national economy that Plaintiff also could have performed. (Tr. 24). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, prior to the expiration of her insured status. (Tr. 25).

As modified by the Appeals Council, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to give the opinion of her treating psychologist controlling weight; and (2) by failing to consider whether Plaintiff's counseling sessions could be scheduled during non-work hours or whether an employer would tolerate frequent absences to attend counseling. Neither assertion of error warrants reversal.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

3

by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for either DIB or SSI benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

4

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

Before turning to the two errors asserted by Plaintiff, it is worth noting that the Defendant repeatedly refers to and relies upon Plaintiff's date last insured of "March 31, 2009," which is the date used by the ALJ.  However, the ALJ's finding was corrected by the Appeals Council to September 30, 2009.  (Tr. 4).  The precise date that Plaintiff was last insured is of particular importance in this case.  Plaintiff must prove that she became disabled prior to the expiration of her insured status, and much of the evidence post-dates her last insured date.  However, as discussed below, the Defendant's mistaken reference to March 31, 2009 has no impact on this Court's conclusion that substantial evidence exists to uphold the Commissioner's decision.

#### 1.  Evaluation of Treating Psychiatrist's Opinion

Plaintiff first argues that the ALJ erred by failing to give the opinion of her treating psychiatrist "controlling" weight.  Dr. Shakil Rahman has treated Plaintiff since February 25, 2009.  Although Defendant incorrectly describes Dr. Rahman's treatment relationship as beginning "a mere five weeks prior to the expiration of her insured status," (Doc. 13 at 10), Dr. Rahman actually began treating Plaintiff approximately six months prior to the expiration of her insured status in September 2009.  During their

5

treatment relationship at Center Point Health Center, Dr. Rahman saw Plaintiff every one and a half to three months for medication management.

In a letter dated December 24, 2010, Dr. Rahman offers several opinions. (Tr. 678-679).  Importantly, Dr. Rahman declined to complete the "mental residual functional capacity assessment" form provided by Plaintiff's counsel, on the basis that he did "not have access to Ms. Bray's entire history and can only report observations made in outpatient therapy and psychiatric sessions, as well as Ms. Bray's report."  (Tr. 677). Thus, Dr. Rahman never rendered any opinions about any specific functional limitations Plaintiff might have in a work setting, nor did he relate any opinions to the relevant time frame - prior to September 2009.  Instead, his letter describes the general symptoms of Plaintiff's Bipolar II mood disorder as including hypomania, depression, sleep disturbance, mood swings, dysphoria, racing thoughts, and anxiety, which result in Plaintiff's feelings of being "overwhelmed."  (Tr. 477).  Dr. Rahman also offers the following prognosis:

> Although it is outside the scope of my practice to generalize my observations to any of my clients in a work setting, I can state that the prognosis for significant improvement is guarded at this time, due to Ms. Bray's recent decompensation, ongoing difficulty with managing her moods, anxiety, and stressors of daily life, and mixed results following several changes in medication protocol.  My observation is that the prognosis will continue to be guarded until Ms. Brady reports a more stable mood, better ability to focus, reduction of psychic energy and return to previous level of functioning.

(Tr. 678).

The relevant regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it

6

controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires "the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."   *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the lack of any particular opinions that relate to her functional abilities in a workplace setting, Plaintiff relies on Dr. Rahman's opinions to prove her alleged disability. Plaintiff contends the opinions are consistent with her October 2010 hospitalization for suicidal thoughts and a decompression episode.  Plaintiff further argues that Dr. Rahman's opinion letter is consistent with "one provided by Dr. James Muldering," (Doc. 9 at 5), and her history of mental illness, which first manifested itself during her childhood.[2]  In addition, Plaintiff asserts that Dr. Rahman's letter is supported by Plaintiff's own testimony, the testimony of her sister, and the witness statement of her mother-in-law. An agency staff member noted that Plaintiff "cried a lot and got very

---

[2]Dr. Muldering offered no formal opinions.  The pages to which Plaintiff refers reflect an initial psychiatric evaluation by Dr. Muldering, dated 2/12/07, prior to the onset of disability, in which Dr. Muldering records Plaintiff's self-reported childhood history of mental illness.  That childhood history also predates the disability period.

7

upset over small questions" during a face-to-face interview, and the hearing transcript also reflects episodes of Plaintiff's tearfulness during questioning by the ALJ. (Tr. 57).

After explaining that he was giving "great weight" to the opinions of several examining and non-examining consultants, and "significant weight" to the opinion of the testifying medical expert, all of whom (unlike Dr. Rahman) provided specific opinions concerning Plaintiff's functional limitations, the ALJ stated that he was giving "[l]ess weight" to the limited opinions expressed by Dr. Rahman. (Tr. 23). The ALJ expressly noted that Dr. Rahman prefaced his statements "by acknowledging that it is outside the scope of his practice to generalize his observations to the performance of any of his clients in a work setting," and reasoned that Dr. Rahman's "opinion is limited by his own statement of his limited scope of practice." (Tr. 23). The ALJ's analysis in this regard is easily affirmed as supported by substantial evidence.

No medical source offered any opinion that Plaintiff was unable to work prior to September 2009. Dr. Rahman's December 2010 opinion is clearly prospective in nature, and is dated more than a year after the expiration of Plaintiff's insured status. Such as it is, the opinion heavily relies upon Plaintiff's "recent" 2010 hospitalization, for an episode of decompensation that also occurred more than a year after the expiration of Plaintiff's insured status. The letter offers very little if any opinion evidence that would support a claim of disability prior to the expiration of Plaintiff's insured status. *Accord Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)(per curiam)(report was "minimally probative" where doctor saw claimant eight months after expiration of insured status); *see also Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004)("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").

While giving little weight to the opinions of Dr. Rahman, the ALJ gave "great weight" to the mental RFC opinions of Dr. Tishler.  On April 3, 2009, Dr. Tishler noted that Plaintiff had experienced "no recent hospitalizations and…just recently started counseling again." (Tr. 454).  Plaintiff contends that Dr. Tishler's opinions are "outdated" because they do not consider her lack of progress in counseling after April 2009, or the fact that she was eventually hospitalized for suicidal ideation. Again, however, Plaintiff's insured status expired in September 2009. Dr. Tishler's opinions were current within five months of that date.  Whatever deterioration in Plaintiff's mental health condition that may have led to her eventual hospitalization thirteen months after her date last insured, Plaintiff offers no evidence to counter the substantial evidence that supports the Commissioner's determination that Plaintiff was not disabled prior to September 2009.

The ALJ also gave significant weight to the opinions of Mary Buban, Psy.D., a clinical psychologist who testified as a non-examining medical expert at the hearing. The ALJ's reliance upon Dr. Buban's opinions was appropriate, in that Dr. Buban testified that she reviewed the entirety of Plaintiff's files, including her treatment records through March 25, 2011 and Dr. Rahman's December 2010 letter.  In addition to her hearing testimony, Dr. Buban expressed her expert opinion in written interrogatories submitted on April 25, 2011.  (Tr. 779-783).  Although Dr. Buban's written responses noted a "decline in functioning" starting on March 9, 2010, that date fell six months after the expiration of Plaintiff's insured status. (Tr. 781).  Like Dr. Rahman's opinions, evidence of Plaintiff's deterioration in 2010 had little relevance to Plaintiff's alleged disability status prior to September 2009. *See Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981)("Evidence of new developments in her mental condition subsequent to the expiration of her insured status would not be relevant.").  In fact, Dr. Buban described

Plaintiff's status prior to March 2010 as "fairly stable." (Tr. 780). During that time frame, her Global Assessment of Functioning ("GAF") score was 61, indicating relatively mild symptoms and limitations, and she was considering computer training in order to enhance her marketable job skills. (*Id.*).

Dr. Buban opined that Plaintiff was "capable of simple, detailed and low-level complex tasks," that she could maintain "superficial contact with supervisors and coworkers, infrequent contact with the public," and that she was precluded from "fast paced work or strict production quotas." (Tr. 783). The ALJ adopted nearly all of Dr. Buban's suggested limitations into Plaintiff's RFC. To the extent that the ALJ did not adopt the limitations as stated by Dr. Buban, the ALJ determined that Plaintiff had even greater limitations. For example, although Dr. Buban opined that Plaintiff was "capable of simple, detailed and low-level complex tasks," the ALJ limited her to unskilled work, with only "simple instructions," "simple repetitive tasks," and "a simple work setting." (*Compare* Tr. 20 with Tr. 783). Similarly, although Dr. Buban opined that Plaintiff could have "infrequent contact with the public," the ALJ limited Plaintiff to a "nonpublic work setting" with only "limited interpersonal demands" from coworkers and supervisors. (*Contrast* Tr. 20 with Tr. 783). Last, the ALJ determined that Plaintiff could function only in jobs "where production quotas are not critical" and where she could "adapt to routine changes in a simple work setting." (Tr. 20, 783).

At the evidentiary hearing, Dr. Buban clarified that the episode of decompensation to which she referred in her interrogatory responses had not occurred until October 2010, although her symptoms seemed to increase for a period of time prior to that date, beginning in March 2010. (Tr. 38). Dr. Buban also testified that Plaintiff's symptoms were expected to worsen during her pregnancy, when she was

10

required to change medications. However, Dr. Buban testified that Plaintiff showed improvement once she gave birth in September 2009 and restarted her medication regimen. (Tr. 43-44). Considering that Plaintiff's medication changes occurred during a period that did not exceed nine months,[3] and Dr. Buban's testimony that she showed improvement thereafter, Plaintiff has failed to show that the severity of her mental impairment reached a disabling level prior to the expiration of her insured status.

As pointed out by the ALJ, Dr. Buban's testimony was consistent with Plaintiff's reported activities of daily living, and with other medical evidence of record. (Tr. 22-23). Plaintiff reported that she was able to take her husband to work and her son to school daily, that she could cook, wash dishes, and bathe her children, and that she liked to read, draw, paint, and sing, and could handle money. (Tr. 309-312). In terms of other medical evidence, Dr. Buban's opinions were consistent with those of two other psychological consultants, Drs. Tishler and Chambly. (Tr. 23). Dr. Chambly's review of the record confirmed Dr. Tishler's assessment in full, and was dated September 2009, the same month that Plaintiff's insured status expired.

In *Blakley*, the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). The *Blakley* court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact

---

[3] Plaintiff testified that her recent pregnancy was an unplanned "surprise," such that her medications were not changed until after she became pregnant.

11

before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007)). Unlike the consultant in *Blakley*, in this case Dr. Buban had the ability to evaluate all of Plaintiff's medical records, and to observe first-hand Plaintiff's testimony and that of Plaintiff's sister. In that respect, Dr. Buban had "a superior longitudinal perspective" of Plaintiff's mental condition, despite not having personally examined Plaintiff. *See Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989)("While the Court recognizes that [the medical expert] did not actually treat or physically examine the claimant, his opinion was based upon the objective evidence of medical reports made by the claimant's treating physicians and testimony given by the claimant himself.").

### b. Scheduling Counseling During Non-work Hours

Plaintiff next contends that the Defendant erred by failing to consider whether Plaintiff could schedule her regular counseling sessions during non-work hours, or whether a future employer would tolerate frequent absences for her to attend counseling. Plaintiff began counseling therapy on December 26, 2008, and continued to attend regular sessions until at least March 23, 2011, the last date reflected in the administrative record. Dr. Rahman opined that Plaintiff will require continued "regular therapy," and Plaintiff's sister testified similarly that she required continued therapy.

The vocational expert testified that Plaintiff could miss two full days of work per month. Plaintiff testified that she generally sees her counselor twice per month, but she also testified that she has required more frequent, weekly visits when things become more "difficult" for her. (Tr. 19). Plaintiff argues that her need to attend counseling would have caused excessive absenteeism from work and therefore the ALJ should have considered that fact prior to finding her not to be disabled. *See e.g., Jones, v*

12


*Sec'y of Health and Human Servs.*, 1985 WL 12990, at *3 (6th Cir., Feb. 8, 1985)(remanded based upon failure of ALJ to consider whether pattern of lengthy hospitalizations for emphysema would preclude sustained work); *Miller v. Astrue*, Case No. 1:12-cv-16, 2013 WL 360375 (S.D. Ohio Jan. 30, 2013)(remand required where evidence showed that plaintiff required 2-hour weekly injections during normal work hours, and vocational expert expressed doubt that absences for treatment would be permitted); *Payne-Hoppe v. Com'r of Soc. Sec.*, Case No. 1:11-cv-97, 2012 WL 395472 (S.D. Ohio, Feb. 7, 2012)(remand required where plaintiff's bi-weekly infusions required her to be at clinic from 1:00 to 4:40 p.m., which conflicted with ALJ's determination that she could obtain a second shift job beginning at 3:00 p.m.).

This case is easily distinguished from the cases on which Plaintiff relies. The record reflects that Plaintiff's counseling sessions were not more than an hour, and therefore would not have required her absence for a full day of work. Of the five discrete periods of time during which Plaintiff claims she was required to see her counselor more frequently than twice per month, only two of those periods occurred prior to the expiration of Plaintiff's insured status in September 2009 - the only relevant period of time. Last, Plaintiff presented no evidence whatsoever that her therapy sessions could not have been scheduled prior to work, after work, on a non-work day, or even over a lunch hour.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB be **AFFIRMED,** as it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED**.

14

        */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CELINE BRAY, | Case No. 1:13-cv-40 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).